LAWRENCE ROGERS (Intervenor below) v. C. L. BANDY, individually and as Tax Collector for Osceola County, (Plaintiff below), J. L. OVERSTREET, as Clerk of the Circuit Court of Osceola County (Defendant below).

182 So. 281
Division A.
Opinion Filed June 14, 1938

*Lawrence Rogers,* for Appellant;

*W. J. Steed* and *Murray W. Overstreet,* for Appellees.

Buford, J.—The appeal brings for review final decree of the Circuit Court of the Ninth Judicial Circuit of Florida, as follows:

"It Is Ordered, Adjudged and Decreed as follows: That J. L. Overstreet as Clerk of the Circuit Court of Osceola County, Florida, be and he is hereby permanently enjoined and restrained:

"From delivering under the provisions of Chapter 18296, Acts of 1937, any Tax Certificate or Certificates issued to the State for the years 1931 to 1935, both inclusive, to any one, on any bid or bids heretofore or hereafter made by them, under said Act, unless such bid, in addition to all clerk's costs and advertising expenses, is in an amount sufficient to pay the plaintiff, C. L. Bandy, as Tax Collector of Osceola County, Florida, a sum equivalent to five per cent. (5%) of the amount of such delinquent tax, as his commission, without first collecting, for Plaintiff, his commission due him."

The Circuit Court filed an opinion which is made a part of the transcript of the record and, in part, is as follows:

"This cause is submitted to the Court on final hearing on bill and answer for a permanent injunction. There are no facts in dispute and so a final determination depends entirely on questions of law.

"The sole question is whether: Under Chapter 18296, Acts of 1937, is the Clerk of the Circuit Court required to collect, upon sale of a tax certificate held by the State for the years 1931 to 1935, both inclusive, in addition to the advertising expenses and Clerk's costs, an amount sufficient to pay the Tax Collector issuing the certificate, the five per cent. (5%) commission, provided by Chapter 15789,

Acts of 1931, Extra Session, Section 1 (Section 970 C. G. L., Permanent Supplement), allowed the Tax Collector, on the amount of each delinquent tax, and embraced in and a part of the Certificate.

"Chapter 15798, Acts of 1931, Extra Session, Section 1 (Section 970 C. G. L. Per. Sup.) provides: 'When lands are advertised for taxes under the provision of this law the tax collector shall be entitled to fifteen cents for certification of sale and shall be entitled to five per cent commission on the amount of each delinquent tax when actual sale is made, *but said tax collector shall not be entitled to any commission for the sale of such property made to the State of Florida until said commission is paid upon the redemption or sale of the tax certificate or certificates issued thereon to the State.'*

"Up until 1929 the Tax Collector's commission on certificates sold to the State, was paid by the State. Between 1929 and 1931 the Tax Collectors did not receive the commission unless the certificate was purchased by one other than the State. In 1931 the Legislature no doubt realizing the injustice to the Tax Collectors who had performed their services, and that no provision was made for payment for these services, amended the law by adding the latter part of the above quoted sentence, underlined by me, commencing with the word 'but.' My interpretation of the Act, as amended, leads me to the conclusion that the Legislature intended to see that the Tax Collectors were ultimately paid for their services, but deferred such payment 'until' *the time* of 'redemption or sale.' The Supreme Court in the case of Lee v. Smith, 111 Fla. 100, 149 Sou. 67, recognized that 'until' the tax collector 'shall have received' his commission he was 'entitled' to the same and said: 'The payment of which was merely postponed until the actual redemption.'

"The Court has held that the Tax Collector, in office at the time of the issuance of the certificates, was entitled to his commission upon redemption or sale. Tyler v. Thomas, 114 Fla. 368, 153 Sou. 848; Gay, Clerk, v. State, *ex rel.* McKenney, 115 Fla. 602, 155 Sou. 845; Tyler v. Nobles, 117 Fla. 328, 161 Sou. 283; National Surety Corporation v. Sholtz, 123 Fla. 110, 166 Sou. 213.

"It would be necessary to substitute the word 'unless' for 'until' to put the construction on that Chapter that if it was not paid at the time of sale, he would not be entitled to his earned commission for services already performed. Likewise, the word 'upon' relates to the time of enjoyment. Skinner v. Christie, 29 Atl. 772, 52 N. J. E. 720; *In re* Foster's Will, 231 N. Y. S. 613, 615, 133 Misc. 222; Wright v. Hanna, 59 Atl. 1097, 210 Pa. 349, 355; *In re* Dyckman's Will, 245 N. Y. S. 631, 635, 138 Misc. 253; State v. Perkins, 40 SW 650, 652, 139 Mo. 105; Margin v. Lancaster, 73 SW 368, 372, 100 Mo. App. 116.

"I have also considered the principles set forth in our Florida decisions as shown in State v. Joughin, 103 Fla. 877, 138 Sou. 392; and State v. Tedder, 106 Fla. 140, 143 Sou. 148.

"I therefore come to the conclusion that a Tax Collector is entitled to his five per cent: (5%) commission on the amount of the delinquent tax on a tax certificate sold to the State upon redemption or sale of the certificate, and that it was clearly the intention of the Legislature in the enactment of Chapter 15798, Acts of 1931, for him to be paid that commission, he being a constitutional officer, having already performed his services in the manner and form as provided by law.

"The question next presented being whether he has a vested right to the commission and has an implied contract for which he is entitled to payment and whether it is a

constitutional right that cannot be taken away from him without due process of law without impairing the obligation of his contract.

"This can only be answered in the affirmative on the authority of many controlling cases, such as: 'Louisiana v. Jefferson Police Jury, 116 U. S. 131, 6 S. Ct. 329, 29 U. S. (L. Ed.) 587 where the Supreme Court of the United States stated that after the services of a public official had been rendered under a law which fixed the rate of compensation, there arises an implied contract to pay for those services at that rate; that the contract is a completed contract and its obligation is perfect; that such an obligation can no more be impaired by a law of a state than one arising on a promissory note.

"The same principle was again before the Supreme Court of the United States in the late case of State of Mississippi v. Miller, 276 U. S. 174, 48 S. Ct. 266, 72 L. Ed. 517, and in an opinion by Mr. Justice Butler, he stated that 'after services had been rendered by a public officer under a law, specifying his compensation, there arises an implied contract under which he is entitled to have the amount so fixed.' He further stated that a subsequent law which took away part of that compensation would impair the obligation of the implied contract under which he became entitled to the commission.

"The same principles are set forth in Sherrill v. Thompson, 145 Tenn. 490, 238 SW 876; Campbell v. City of Boston, 290 Mass. 427, 195 NE 802; Limestone County v. Robbins, 38 SW (2nd) 580, 120 Tex. 341, and 42 SW (2nd) 159; State, ex rel. Pike, v. City of Bellingham, 48 Pac. (2nd) 602, 183 Wash., 439.

"I have also considered State v. City of Tampa, 119 Fla. 556, 159 Sou. 292. I have also considered the text in 22 R. C. L. 525, Section 216.

"I have also considered the case of State v. Lee, 121 Fla. 360, 163 Sou. 859, 873.

"I, therefore, come to the conclusion that Tax Collectors who have not already received, for each of the years 1931 to 1935, both inclusive, their maximum fees as allowed by law, are entitled to their commission for services already performed upon the 'sale of the tax certificate,' which obligation cannot be impaired by the Legislature, and if Chapter 18296, Acts of 1937, by implication deprived the Tax Collectors of their commission, then to that extent, that Act would be unconstitutional."

We find no error in the opinion.

It conforms to our holding in the recent case of D. S. Weeks as Clerk of the Circuit Court of Glades County, Florida, v. State of Florida, *ex rel.* J. P. Moore, individually and as Tax Collector of Glades County, filed at this term of the Court, not yet reported.

The decree apealed from should be and is affirmed.

WHITFIELD, TERRELL and CHAPMAN, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—The opinion hereinabove quoted from was written by Judge Frank A. Smith, Senior Circuit Judge of the Ninth Judicial Circuit. Circuit Judge M. B. Smith, of the same circuit, who also participated in the decision of the Court below in this case, rendered a special concurring opinion which reached the same conclusion by a somewhat different route. As it is the duty of the Court to so construe an Act as to avoid any grave doubts as to its constitutionality, where this can reasonably be done without violating the legislative intent, I think part at least of the opinion of Judge M. B. Smith which I consider well founded, should be here set forth. As shown by the record, he said:

"I concur in the conclusion reached by Judge Frank A. Smith in the foregoing opinion and answer the question presented also in the affirmative, but am not particularly concerned with the question of the constitutionality of Chapter 18296 of 1937, for in my opinion both Acts can stand and operate together, viz.: Chapter 15798, Acts of 1931, and Chapter 18296, Acts of 1937, without contravening the intent of the lawmaking power and without necessarily holding the later Act unconstitutional to protect the constitutional rights of Plaintiff.

"The statutes involved are to be construed under the well recognized principles announced in the following cases:

" 'The legal presumption is that the Legislature did not intend to keep contradictory enactments in the statute book or to repeal a law without expressing an intent so to do, and where the Courts can, in construing two provisions, preserve the force of both without destroying their evident intent, it is their duty so to do. State v. Givens, 37 So. 308, 48 Fla. 165. And to the same effect: Sparkman v. State, 71 So. 34, 71 Fla. 210. Stewart v. DeLand, etc. 71 So. 42, 71 Fla. 158.

"Also: 'Laws should be construed with reference to the Constitution and the purpose designed to be accomplished, and in connection with other laws *in pari materia.*" State v. Johnson, 72 So. 477, 71 Fla. 363.

" 'The rule that statutes are not to be construed retrospectively, unless such construction was plainly intended by the Legislature, applies with peculiar force to those statutes the retrospective operation of which would impair or destroy vested rights.' *In re* Seven Barrels of Wine, 78 Fla. 1, 83 Sou. 627.

"Now a careful reading of Chapter 18296, Acts of 1937, will show that there is nothing therein which can be inter-

preted to take away or diminish the fees of tax collectors for services already rendered.

"To determine that the Legislature intended to diminish the fees of tax collectors for services already rendered we would have to decide that to that extent they intended to repeal Chapter 15798, Acts of 1931, which would be a repeal by implication, the result of which would impair or destroy vested rights.

"The proper presumption is that the Legislature had Chapter 15798, Acts of 1931, in mind at the time of the enactment of Chapter 18296, Acts of 1937, and provided for the collection of the Tax Collector's earned commissions, in the passage of the latter Act.

"Some of my reasons for this are as follows:

"The only places where the word 'costs' appears are the following sections: Section 3. 'Upon the payment of the bid as aforesaid, and after deductions of any *costs* or *expenses of such sale,* the said Clerk shall distribute the money so derived from said sale *between the State and the County* in proportion to the amount of taxes levied by each.'

"Surely if they had not intended for the word 'costs' to include the tax collector's commission they would have provided for the payment of the same to him before they would have the Clerk distribute the money 'from said sale' between the State and the County. His commission is a part of the face of the certificate and it would be going mighty far to impute a legislative intent to take 'his money' and not pay him and then distribute his commission between the State and County and leave him without his commission. If that was the intention, which I do not think, the word 'costs' only meant *'Clerk's costs'* of such sale. I think it meant *all costs heretofore incurred* in obtaining the thing (certificate) being sold and one of these items is the costs due the Tax Collector.

"Section 4. 'Clerk of Circuit Court to whom any such application is made is hereby authorized to require of such applicant a deposit of sufficient amount to cover *all advertising and other costs incident to making of such sale,* which deposit shall be credited upon bid made by such applicant.'

"Now we find the expression 'other costs incident to making such sale' used in this section. That word 'incident' was used for some purpose; if not to cover the tax collector's costs, I see no reason for its use. The phrase 'other costs' of 'making sale' was sufficient to cover the *Clerk's costs* if that was the only costs they intended to have paid. The word 'incident' is defined by the Twentieth Century Dictionary as 'appertaining to or following the chief or principle; as a payment incident as a fee of office' also 'in connection with the main design.' "

The opinion then goes on to call attention to similar language in Section 10 of the Act. From these three quotations from the Act, which appear to be the only portions thereof dealing with the question of the costs incident to sales made thereunder, the opinion goes on to conclude that the Legislature never intended by the use of such language to confine the costs to clerk's costs only, but must have intended to include also the tax collector's commission, which was shown on the face of the certificate.

Thus construing Chapter 15798, Acts of 1931, and Chapter 18298 of 1937 together, Judge Smith concludes that the phrases "any costs or expenses" and "other costs incident to" should be construed to include not only the clerk's costs but also the tax collector's costs, that is, the already earned 5 per cent. commission, set forth on the face of the certificate, thus reaching the same conclusion as that reached by Judge Frank A. Smith.

WHITFIELD, J., concurs.