Cronin, J.
The Plaintiff requests “dissolution” of a civil union entered into with the Defendant in the State of Vermont. This request is not contested by the Defendant. The parties do not have any outstanding disputes over property and there are no children of this union. Upon consideration of the pleading, the representations of the Plaintiff and his attorney, the full faith and credit clause of the United States Constitution, the Defense of Marriage Act, the Vermont Civil Union Statute, Massachusetts case law, and this Court’s equity jurisdiction, the Court thereby allows Plaintiffs request and dissolves the civil union of David B. Salucco and Patrick W. Alldredge.
I. Basic Factual Background and Procedural History
On May 18, 2002, David Salucco (hereinafter Plaintiff), a resident of Massachusetts, and Brian Alldredge (hereinafter “Defendant”), a resident of Arkansas, a same-sex couple, participated in a civil union in the State of Vermont. After four days, the parties separated and have not lived together since May 22, 2002. There were no biological or adopted children of the civil union and neither party contends that either of them is a “de facto” parent of any children. Plaintiff is represented by Attorney Robert C. Benoit.
On September 11, 2002, Plaintiff filed a Complaint in Equity seeking dissolution of the parties’ civil union in this Court. The Complaint alleges that the parties “suffered an irretrievable breakdown of their civil union” on or about May 19, 2002. On October 16, 2002, Plaintiff served Defendant, in Arkansas, with a summons and a copy of the Complaint in this action. Defendant did not file any responsive pleading nor an appearance in this case.
On February 13, 2003, Plaintiff filed and served a “Motion for Entry of Judgment. ” A hearing on that Motion was held on March 19, 2003. At that hearing, three attorneys were present on behalf of Plaintiff (Attorneys Robert Benoit, Charles Sillari, and Stephen Glines, Jr.). Plaintiff was also present throughout that hearing. Defendant did not attend the hearing, nor was he represented by counsel at the hearing. Attorney Benoit represented to the Court that he spoke by telephone with Defendant on March 18, 2003, and Defendant informed him that he was aware of the scheduled hearing and was “in full agreement” with the relief sought.
On March 19, 2003, Plaintiff filed a Memorandum in Support of the instant Complaint, and an Affidavit in support thereof. On the same date, the parties filed a joint Affidavit in Support of the instant Complaint, and they also filed a stipulated separation Agreement wherein they agreed upon the division and distribution of their respective property. On March 25, 2003, Plaintiff filed a Supplemental Memorandum in Support of the Complaint.
On December 13, 2003 the Court entered a Sua Sponte Order wherein it ordered the parties to submit by January 30, 2004, supplemental memoranda regarding the effect of Goodridge v. Department of Public Health, 440 Mass. 309 (2003), on the instant matter. On February 3, 2004, Plaintiff filed a Motion for Extension of this Order for an additional sixty days within which to file the supplemental memoranda. That Motion was allowed by the Court.
II. Discussion
a. Vermont Civil Union
A civil union is a creature of statute. The statutes at issue in this case are Vt. Stat. Ann. Tit. 15, §§1201-1206. For a civil union to be established in Vermont, the parties must be of the sane sex and, therefore, excluded from the marriage laws of Vermont. Vt. Stat.
*499 Ann. Tit. 15, §1202.[1] A Civil union in the State of Vermont provides same-sex couples with “all of the same benefits, protections and responsibilities under law, whether they derive from statute, administrative or court rule, policy, common law or any other source of civil law, as are granted spouses in a marriage.” Vt. Stat. Ann. Tit. 15, §1204. Marriage, as defined in Vermont, means the legally recognized union of one man and one woman, and, as such, a civil union is not marriage. See Vt. Stat. Ann. Tit. 15, §1201. Following this distinction, parties to a civil union in Vermont cannot obtain a divorce in Vermont, as they are not considered married, but can obtain a dissolution of their union in the Family Court. Vt. Stat. Ann. Tit. 15, §1206. While not called marriage, the union confers the couple with the same rights, and obligations as created by marriage and provides the same legal standards and remedies for dissolution. Id. The Statute provides that “the law of domestic relations, including annulment, separation and divorce, child custody and support, and property division and maintenance shall apply to parties to a civil union.” Id.
In Vermont, although there is not a residency requirement for the formation of a civil union, a residency requirement exists for dissolution of a civil union. See Vt. Stat. Ann. Tit. 15, §§1202, 1206. To obtain a dissolution of a civil union, one party must have been a resident of Vermont for one year preceding the date of a final hearing. Vt. Stat. Ann. Tit. 11, §3.
In this case, neither party has any contact with the State of Vermont, except for entering into a civil union in that state. Neither party has ever resided in the State of Vermont; and neither party intends to become a resident of Vermont. Consequently, the parties are unable to obtain a dissolution of their civil union in Vermont. In addition, the parties are unable to obtain a divorce in either Arkansas or Massachusetts, their states of residence, because they are not considered “married” for purposes of divorce statutes in those states. See G.L.c. 208; Ark. Code. Ann. §§9-11-107, 301-307. Without a dissolution of their Vermont civil union, neither party may enter into another civil union or a marriage.
As distinguished from a “domestic partnership” which involves a more limited grant of authority from a state, Vermont, by enacting Title 15, has established this civil union as the substantial equivalent of marriage. “It cannot be terminated unless dissolved in a manner which is virtually identical to a civil divorce for married couples.” Vermont Civil Unions, 89 Ky.L.J. 1075, 1080 (2000).
As a result of the inability of the parties to obtain dissolution of their civil union in Vermont, Plaintiff, as a resident of Massachusetts, seeks relief in this Court. He requests that this Court dissolve the civil union entered into by the parties under Article IV of the United States Constitution, also known as the “full faith and credit clause,” and under G.L.c. 231A. Plaintiffs prayers for relief shall be addressed below.
b. Full Faith and Credit and the Defense of Marriage Act
Pursuant to Article IV, Section 1 of the United States Constitution (codified at 28 U.S.C.A., §1738) states are required to give “full faith and credit” to the public Acts, Records, and Judicial Proceedings of every other state. For example, parties that are lawfully married in one state would be recognized as married in another state. Vital v. Vital, 319 Mass. 185 (1946); Damaskinos v. Damaskinos, 325 Mass. 213 (1950); See also Williams v. North Carolina, 317 U.S. 237 (1942) (standing for the proposition that one state should recognize as valid a marriage that takes place in another state between domiciliaries of that state).
There is a public policy exception to the “full faith and credit” requirement that says states do not have to recognize the acts of other states if doing so would be inconsistent with the public policy of their own state. With regard to marriage, the public policy exception would permit a state to decline to honor a marriage contracted in another state if it violates the public policy of the reviewing state. See G.L.c. 207, §§10, 11;[2] Gerrig v. Sneirson, 344 Mass. 518 (1962). See also Cartwright v. Cartwright, 76 N.Y.S.2d 10 (1947) (holding that a New York resident cannot validly many in Massachusetts when he is prohibited from marrying in New York).
In addition, the Defense of Marriage Act (codified at 28 U.S.C.A., §1738C) (hereinafter “DOMA”), a federal statute, provides that same-sex relationships cannot be treated as a marriage under federal law; defines marriage as a legal union between one man and one woman as husband and wife; and proclaims that states need not recognize same-sex marriages, or rights arising out of same-sex relationships that are legally recognized in another state. See e.g. Rosengarten v. Downes, 71 Conn.App. 372 (2002) (recognizing Connecticut’s right under DOMA not to recognize same-sex relationships treated as marriage in another state). Approximately thirty-seven states have adopted DOMA since its passage in 1996. Massachusetts has not adopted DOMA.
In this matter, Plaintiff contends that under the full faith and credit clause, this Court should recognize the parties’ civil union and dissolve it. However, since the parties are not considered married under Vermont law, and there is no existing statutory mechanism in Massachusetts for dissolution of a civil union, the application of the full faith and credit clause is not certain in this action.
c. Massachusetts Public Policy
In Plaintiffs second claim for relief, he seeks any relief to which he may be entitled under equity. There are no clear statutes with regard to same-sex marriage rights in Massachusetts, and no case law directly on point for the issue of dissolution of civil unions. However, since the time of the hearing in this matter, public policy in Massachusetts regarding same-sex unions has *500 changed. See Goodridge v. Department of Public Health, 440 Mass. 309 (2003); Opinion of the Justices to the Senate, February 3, 2004 (S.J.C. 09163). The issue of marriage rights for same-sex couples has recently been discussed in Goodridge and the Opinion of the Justices, the Supreme Judicial Court’s response to the Senate of Massachusetts regarding certain aspects of the Goodridge decision. Id The Supreme Judicial Court concluded in both instances that, consistent with the Massachusetts Constitution, the Commonwealth may not deny the benefits, protections and obligations conferred by civil marriage to two individuals of the same sex who wish to marry. Goodridge, 440 Mass, at 342; Opinion of the Justices, at 10-14.
A careful reading of Goodridge and the Opinion of the Justices provides that same-sex couples should be afforded the same rights and responsibilities as those of opposite-sex married couples. Id Opposite-sex couples who marry are afforded the opportunity to extinguish their legal relationship through the mechanism of divorce. Reasoning follows therefrom that same-sex couples who enter into legal relationships should also be allowed to dissolve their legal relationships.
d. Equity Jurisdiction
General Law Chapter 215, Section 6, provides: “The probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction.” The Probate Court’s equity jurisdiction is broad. See e.g., E.N.Q. v. L.L.M., 429 Mass. 824, 826-28 (1999) (affirming the Probate Court’s authority under its equity jurisdiction to grant visitation to the child’s de facto parent, who was the biological mother’s same-sex partner); Youmons v. Youmons, 429 Mass. 774 (1999) (holding that, although there was no statutoiy authority to do so, the Probate and Family Court had authority to award visitation to child’s aunt under its broad equitable powers).
Here, the parties are in need of a judicial remedy to dissolve their legal relationship created by the laws of Vermont. Because Vermont does not define a civil union as a marriage, the provisions of General Laws Chapter 208, which provide for divorce in Massachusetts, are not applicable to this action. However, in accord with the decision in Goodridge, and the public policy of Massachusetts, the Plaintiff and the Defendant in this matter should be afforded all of the responsibilities and rights that flow from a civil union, including a legal remedy for the dissolution of their legal relationship. Pursuant to the Judgment in this action, the Court exercises its general equity jurisdiction to dissolve the civil union of Plaintiff and Defendant. Based upon the uncontested evidence, the Court finds an irretrievable breakdown of the civil union between the parties has occurred continuously since May 19, 2002, up to and including the date of the hearing.
e. The March 18, 2003 Agreement
The parties also requested that the Court enforce a separation agreement filed March 19, 2003, entered into by them which, they contend, provides for a distribution of their property and a comprehensive settlement and resolution of all other rights and responsibilities between them.
Although there is no case law dealing with the standard for approval of a separation agreement in accordance with dissolution of a civil union, this court, sua sponte, analyzes the separation agreement under the same standard applicable to divorcing couples. In Massachusetts, separation agreements between divorcing parties are valid and binding and specifically enforceable absent countervailing equities when the court determines that the agreement is free from fraud and coercion, that the terms are fair and reasonable at the time of the entry of judgment, and that the parties agree upon the finality of the judgment. Dominick v. Dominick, 18 Mass.App.Ct. 85 (1984).
Plaintiff represents that there are no issues concerning the settlement of property remaining between the parties. Although Defendant has not appeared before this Court, the agreement appears free from fraud and coercion; and its terms are fair and reasonable when applied to the very short-term civil union. After review of the separation agreement, the Court finds that the agreement of Plaintiff and Defendant is fair and reasonable. It is approved by the Court; and is incorporated into and made a part of the Judgment in this action. Notwithstanding such incorporation, however, the agreement shall retain independent legal significance and shall remain an independent contract between the parties.

Section 1202 of Title 15 of the Vermont Statutes Annotated provides:
For a civil union to be established in Vermont, it shall be necessary that the parties to a civil union satisfy all of the following criteria:
(1) Not be party to another civil union or marriage.
(2) Be of the same sex and therefore excluded from the marriage laws of this state.
(3) Meet the criteria and obligations set forth in 18 V.S.A., chapter 106.

G.L.c. 207, §11 provides in full:
If any person residing and intending to continue to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes in this commonwealth with the same effect as though such prohibited marriage had been entered into in this commonwealth.
G.L.c. 207, §10 provides in full:
No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.